FILED

2008 Aug-11 PM 03:28
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### JASPER DIVISION

| | | |
|---|---|---|
| BRYAN MEINERT, et al., | ] | |
| | ] | |
| Plaintiffs, | ] | |
| | ] | |
| vs. | ] | 6:07-CV-01108-LSC |
| | ] | |
| FARM BUREAU INSURANCE OF | ] | |
| NORTH CAROLINA, INC., | ] | |
| | ] | |
| Defendant. | ] | |

## MEMORANDUM OF OPINION

The Court has for consideration two motions for summary judgment.
Plaintiffs Bryan Meinert and Michael Rogers have sued the defendant, Farm
Bureau Insurance of North Carolina, Inc. ("Farm Bureau"), for breach of
contract and fraud arising from Farm Bureau's alleged failure to pay
severance, accrued sick leave, and overtime after terminating Plaintiffs'
employment.  Farm Bureau has moved for summary judgment on all of
Plaintiffs' claims.  (Doc. 24.)  Plaintiffs have moved for partial summary
judgment with regard to their claims for severance pay and sick leave.
(Doc. 25.)  The issues raised in these motions have been briefed by both

parties and are ripe for review.   Upon full consideration of the legal arguments and evidence presented, Plaintiffs' motion will be denied, and Defendant's motion will be granted in part and denied in part.

II.    Evidentiary Motions.

As a preliminary matter, the Court will address the evidentiary motions filed by both parties.

First, Plaintiffs have moved to exclude and/or strike the affidavits of Steven Carroll and Bryan Crook, as well as a document attached as an exhibit to Carroll's affidavit, under Fed. R. Civ. P. 37(c)(1). (Doc. 31.) Plaintiffs contend that neither Carroll, Crook, nor "Exhibit 1" to Carroll's affidavit, were timely disclosed pursuant to Fed. R. Civ. P. 26(a).  Plaintiffs also argue that portions of both affidavits are not otherwise admissible because they were made without personal knowledge, are immaterial, and/or are conclusory in nature.

According to Fed. R. Civ. P. 37(c)(1), parties are not prohibited from using the statements of undisclosed witnesses or undisclosed information if the failure to disclose has substantial justification or is harmless.   It is undisputed that Farm Bureau did not disclose the identity of Carroll or Crook

prior to filing their affidavits in support of summary judgment; Farm Bureau also did not identify "Exhibit 1," a transition agreement between Farm Bureau and Cotton States Mutual Insurance Company ("Cotton States"), in its initial disclosures.  Plaintiffs argue that the failure to disclose is not harmless because they have been "sandbagged."  (Doc. 31 ¶ 12.)

However, Plaintiffs have not refuted the justifications outlined in Defendant's response to their motion to strike.  According to Farm Bureau, defense counsel was unaware that Crook had discoverable information related to this case until Plaintiffs clarified in their depositions that "Catastrophe Pay," or "CAT Pay," might be a part of their claims for overtime pay.  Prior to those depositions, defense counsel was similarly unaware that Plaintiffs attributed certain representations regarding their employment to Carroll and Crook.  Plaintiffs' depositions were taken on April 16, 2008, and April 22, 2008.  Defendant's motion for summary judgment, which includes the disputed evidence, was filed on May 1, 2008.

Regarding "Exhibit 1," the transition agreement between Farm Bureau and Cotton States, Defendant argues that the nondisclosure was harmless because both defense and Plaintiff's counsel were given a copy of the

agreement by Cotton States' attorney on or about February 1, 2008—a fact Plaintiff's counsel does not refute.   Defendant also maintains that the nondisclosure of Carroll and Crook was similarly harmless because their identities were obviously known to the plaintiffs:  Carroll's name was on the transition agreement provided to the plaintiffs, and Plaintiffs themselves testified regarding alleged representations made by Carroll and Crook.

The Court is satisfied that Farm Bureau has proffered substantial justification for the nondisclosure of the identities of Carroll and Crook. Moreover, the failure to disclose those identities, as well as the information contained in "Exhibit 1" to Carroll's affidavit, was harmless.  Plaintiffs had sufficient opportunity to interview or depose those whom they believed had information regarding their claims and investigate the transition agreement provided them by Cotton State's attorney.   Their motion to strike, therefore, will be denied.   To the extent the motion seeks to strike statements in the Carroll and Crook affidavits, the Court has noted Plaintiffs' objections.  The potential admissibility of evidence at trial was carefully weighed by the Court during the summary judgment process, and

all evidence that could not be reduced to admissible form at trial was rejected.  *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999).

Defendant has moved to strike Plaintiffs' submission of their own declarations for failure to timely disclose the identity of William Pollard, an individual referenced in the declarations, and for conflicts with earlier deposition testimony.  (Doc. 41.)  However, Farm Bureau's motion to strike does not cite any legal or evidentiary support for its contentions.  Farm Bureau does not explain how it was harmed by Plaintiffs' failure to disclose the identity of Pollard, a previous employee of Farm Bureau from whom the defendant subsequently obtained an affidavit.  And, Defendant does not explain how Plaintiffs' declarations conflict with previous deposition testimony.  Therefore, Farm Bureau's motion to strike will also be denied.

III.   Facts.[1]

Bryan Meinert began his employment in Farm Bureau's Claim Department on or about May 29, 2001.  Michael Rogers commenced his employment at Farm Bureau on or around July 1, 2002.  Both men were issued an Employee Handbook, which included a provision on overtime and the rate at which an employee could accumulate sick leave.

In or around May 2005, Farm Bureau's Claim Department employees met with members of Farm Bureau's management in Cullman, Alabama.  Members of management included then-executive vice-president and general manager, William Pollard, and current executive vice-president and general manager, Steven Carroll.  During the meeting, Plaintiffs and other Claim Department employees received a handout that outlined two options by which they could be paid severance as Farm Bureau considered ending its business in Alabama.  The parties disagree on how Pollard explained the

_____

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

handout to the employees.  Plaintiffs contend that Pollard reassured them that they would receive severance if they stayed with Farm Bureau and helped them wrap up their operations in the state.  Farm Bureau maintains that Pollard was clear that severance would be paid only if the employees did not obtain employment with the company in North Carolina or a successor company in Alabama.

On December 31, 2005, Plaintiffs' employment with Farm Bureau was terminated.  Both were subsequently hired, effective January 1, 2006, as employees of Cotton States pursuant to a transition agreement that was executed with Farm Bureau on or around September 30, 2005.  Neither plaintiff received severance pay from Farm Bureau, and neither plaintiff received payment for overtime work or unused sick leave.

IV.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d

1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

V.     Analysis.

A.     Breach of Contract Claims.

Plaintiffs have alleged that although they were at-will employees with Farm Bureau, their employer was bound by contract, per the terms outlined in the employee handbook, to pay them overtime and unused sick leave. Plaintiffs also claim that the handout distributed in May 2005 constituted an offer to pay severance, which they accepted by continuing their employment with Farm Bureau.   Farm Bureau has moved for summary judgment on each of these contract claims.   Plaintiffs have requested summary judgment with regard to their severance and sick leave claims.

1.     Sick Leave.

Plaintiffs have both submitted declarations stating that one of the terms and conditions of their employment was "accrued" sick leave, as outlined in their employee handbook.   Defendant maintains that the employee handbook referenced by the plaintiffs cannot constitute an

employment contract under Alabama law because one of the very first pages

of the handbook reads as follows:

> HANDBOOK not term or condition of employment or
> employment contract.
>
> Information contained in this Handbook is offered
> only as helpful guidelines to all employees. It is not
> to be used, construed, or incorporated by reference
> for providing any terms, conditions, or commitments
> to the employment arrangements made with any
> employee. The Handbook does not constitute an
> employment contract in whole nor in part, and Farm
> Bureau reserves the right to add, amend, or delete
> at any time any policy or procedure stated herein.

In response, Plaintiffs cite *Amoco Fabrics & Fibers Co. v. Hilson*, 669 So. 2d

832 (Ala. 1995), for the proposition that an employee handbook can

constitute an offer for an employment benefit, such as vacation or sick

leave, despite an express disclaimer of contractual liability.

It is, however, unnecessary for this Court to decide whether the

language contained in the employee handbook at issue meets the

requirements set forth in *Hoffman-La Roche, Inc. v. Campbell*, 512 So. 2d

725, 735 (Ala. 1987), and establishes a binding unilateral contract for sick

leave under Alabama law. Even if the employee handbook in this case

constitutes such a contract, Plaintiffs have failed to point to any provision therein that says an employee will be paid for unused sick leave when their employment is terminated.

In *Amoco Fabrics & Fibers Co.*, the employee handbook stated that employees received vacation *pay*, and outlined their eligibility for withdrawing accrued vacation *pay*, regardless of whether the employee actually took time off work for vacation.  669 So. 2d at 833-34.  Farm Bureau's employee handbook, on the other hand, outlines the method by which employees "accumulate sick *leave*," and introduces the sick leave section as follows: "Your employer provides a plan of sick leave to help you during periods of *absences from your job* because of your illness or injury." (Handbook at 11 (emphasis added).)  The provision continues:

> Sick leave includes dental appointments, doctor's office visits, eye examinations and necessary *absence from work* due to sickness, disease or bodily injury caused by accident.   In addition to the employee, sick leave also includes *absences* necessary because of illness, disease or bodily injury of the employee's immediate family, when the member of the immediate family is unable to care for themselves.

(*Id.* (emphasis added).)   All references to sick leave in Farm Bureau's employee handbook pertain to time off of work, and absolutely no mention is made of an employee receiving payment for unused sick leave. Furthermore, in the severance portion of the handbook, it states that "[E]mployees whose service is being terminated on their own or the organization's volition will be paid all earned and unused vacation time." (*Id.* at 9.)   Again, no mention is made of payment for accrued and unused sick leave at the time of termination.   Therefore, summary judgment is due to be granted to the defendant with regard to Plaintiffs' claim for unpaid sick leave; Plaintiffs' motion on this claim will be denied.

        2.    Overtime.

In response to Defendant's motion for summary judgment on their claim for unpaid overtime, Plaintiffs' contention is incredibly brief: "Plaintiffs adopt their arguments about contract law argued in support of all other contract claims in opposition to [Farm Bureau's] motion regarding overtime pay."  (Doc. 35 at 28.)   The Court assumes then, that Plaintiffs mean to adopt their contract arguments regarding the employee handbook,

since the May 2005 employee handout has not been alleged to relate to their overtime claim.

In Farm Bureau's employee handbook, the overtime provision reads:

> Occasionally, due to quantity of work, it may be necessary that you be asked to work hours in excess of your regular 40-hour week. All overtime work must be approved by your supervisor prior to the time you intend to work.
>
> All hours in excess of your regular 40-hour week will be paid at the rate of 1-1/2 times the regular hourly wages.

(Handbook at 6.) Once again, however, even if this Court assumes the employee handbook at issue constitutes a binding unilateral contract under Alabama law, Plaintiffs have not adduced sufficient evidence to survive summary judgment on their claim. Namely, Plaintiffs have not produced admissible evidence of dates when they worked overtime; Plaintiffs have not offered anything more than speculation as to the number of hours they worked overtime; and Plaintiffs have not established that their alleged overtime was in fact approved for payment as "overtime work" by their supervisor prior to working an unknown number of overtime hours on unknown days. Moreover, it undisputed that Plaintiffs were salaried

employees and did not receive a "regular hourly wage[]."  Therefore, summary judgment will also be granted to Farm Bureau on this claim.

        3.    Severance.

Both parties have moved for summary judgment with regard to Plaintiffs' claim for severance pay.  Plaintiffs argue that the May 2005 employee handout entitled "Claim Department Employees" constituted a written offer for severance, which was accepted by their continuing to work for Farm Bureau until it finished its business in Alabama.  Plaintiffs contend that the written offer was clarified orally at the meeting by Bill Pollard, a senior executive, who allegedly told the plaintiffs and other employees that they would be paid severance under either of the two options listed: Farm Bureau sells the insurance business, or it exits the Alabama market. Plaintiffs maintain that Farm Bureau "exited" the Alabama market because Defendant never sold its business.

Farm Bureau admits that the handout was distributed to employees by the then-executive vice-president and general manager, and current executive vice-president and general manager, at a meeting with Farm Bureau's Alabama employees.  However, Defendant maintains the document

was not an offer, was only intended to be "informational," and was "prepared for the employees as Farm Bureau considered its options with respect to its Alabama operations."  (Doc. 24 at 11.)

Farm Bureau also submits Pollard's affidavit, which states that when the handout was distributed, it was "clearly explained" that severance would only be paid "in the circumstance of Farm Bureau *not selling or transitioning* its Alabama business to another company" and the employees "did not have the opportunity for continued employment with a successor company . . . [or Farm Bureau] in North Carolina."  (Pollard Aff. ¶ 3 (emphasis in original).)  Defendant argues that because Farm Bureau's Alabama business was transitioned to Cotton States and both plaintiffs were hired as employees with Cotton States, there was no obligation to pay severance, even if the handout constituted a contract.

Under Alabama law, company documents other than handbooks and manuals may be construed as binding employment offers under *Hoffman-La Roche, Inc.*, and its progeny.  *Paseur v. City of Huntsville*, 642 So. 2d 969, 971 (Ala. 1994).  The "party seeking to prove that a particular . . . company

document amounts to a binding offer of an employment contract must meet

certain requisites set forth in *Hoffman-La Roche*:

> . . . . First, the language contained in the handbook [or other document] must be examined to see if it is specific enough to constitute an offer.  Second, the offer must have been communicated to the employee by issuance of the handbook [or other document], or otherwise.  Third, the employee must have accepted the offer by retaining employment after he has become generally aware of the offer.  His actual performance supplies the necessary consideration.

*Id.* (quoting *Hoffman-La Roche, Inc.*, 512 So.2d at 735.)  Furthermore:

> To satisfy the first requirement in the *Hoffman-La Roche* analysis, "the language used in the handbook [or other document] must be specific enough to constitute an actual offer rather than a mere general statement of policy." *Hoffman-La Roche*, 512 So. 2d at 734.  Whether the language in the handbook [or other document] was intended to be an offer is determined by reference to the reasonable meaning of the parties' external and objective manifestations, rather than by their uncommunicated beliefs.  *Mayo v. Andress*, 373 So. 2d 620, 623-24 (Ala. 1979).

*Id.* (quoting *Bell v. S. Cent. Bell*, 564 So. 2d 46, 48 (Ala. 1990).)

Despite Farm Bureau's contention that the May 2005 handout did not

constitute any kind of offer, the Court finds it noteworthy that Pollard's

affidavit says that he "never 'represented, offered, promised, and explained' anything to [P]laintiffs as to severance pay *other than in the context* of their not being employed or offered employment by a successor company to Farm Bureau's Alabama business." (Pollard Aff. ¶ 4 (emphasis added.)  Viewing the evidence in the light most favorable to the plaintiffs for purposes of ruling on Defendant's motion for summary judgment, a reasonable jury could find the language of the employee handout, as explained and clarified by Pollard at the time of its distribution, specific enough to be an offer under *Hoffman-La Roche, Inc*.  *See also Evans v. Nat'l Microsystems, Inc.*, 576 So. 2d 207 (Ala. 1991).  Genuine issues of fact exist as to what Pollard said at that May 2005 meeting and how the handout was explained to employees.  Because it is undisputed that both plaintiffs continued to work for Farm Bureau after the employee handout was discussed and distributed at the May 2005 meeting, and did so until Farm Bureau wrapped up its business in the State of Alabama, these questions of fact regarding Pollard's external and objective manifestations at the time of the alleged offer prevent this Court from granting summary judgment to either party on Plaintiffs' breach of contract claim for severance pay.

B.    Fraud Claims.

Plaintiffs have also alleged that Farm Bureau is liable for fraud in connection with the defendant's communications to employees regarding severance pay at the May 2005 meeting.   In their Amended Complaint, Plaintiffs assert that Farm Bureau fraudulently represented that it would pay its Claim Department employees severance pay as described in the employee handout distributed during that meeting.  Plaintiffs agree that this claim is one of "promissory fraud," which is "one based upon a promise to act or not to act in the future." *Ex parte Michelin N. Am., Inc.*, 795 So. 2d 674, 678 (Ala. 2001).

To prove a claim of promissory fraud, a plaintiff must establish: "(1) that the defendant made a false representation of a material fact; (2) that the false representation was relied upon by the plaintiff; (3) that the plaintiff was damaged as a proximate result of the reliance; (4) that the representation was made with a present intent to deceive; and (5) that when the representation was made the defendant intended not to perform in accordance with it." *Howard v. Wolff Broad. Corp.*, 611 So. 2d 307, 311 (Ala. 1992), *cert. denied*, 507 U.S. 1031 (1993).  "[T]he law places a heavier

burden in those fraud actions where one attempts to prove fraud based on a misrepresentation relating to an event to occur in the future" by requiring the plaintiff to establish that "the promisor had no intention of carrying out the promises, but rather had a present intent to deceive" at the time the alleged promises were made. *Nat'l Sec. Ins. Co. v. Donaldson*, 664 So. 2d 871, 876 (Ala. 1995); *Hearing Sys., Inc. v. Chandler*, 512 So. 2d 84, 87 (Ala. 1987).  "The plaintiff cannot meet his burden merely by showing that the alleged promise ultimately was not kept; otherwise, any breach of contract would constitute a fraud." *Goodyear Tire & Rubber Co. v. Washington*, 719 So. 2d 774, 776 (Ala. 1998) (quoting *Purcell Co. v. Spriggs Enters., Inc.*, 431 So. 2d 515, 519 (Ala. 1983)).  "There must be substantial evidence of a fraudulent intent that existed when the promise was made." *Id.* (citing *Martin v. Am. Med. Int'l, Inc.*, 516 So. 2d 640, 642 (Ala. 1987)).

Plaintiffs argue that other circumstances indicate that Farm Bureau, through Pollard, had a present intent to deceive its employees at the May 2005 meeting by promising severance pay without any intention of paying. These circumstances include: Steven Caroll's affidavit statement that the employee handout was "never intended to be a contract," alleged

suppression that the handout was meant to be only "informational"; and Carroll's lack of confirmation in his affidavit that Farm Bureau dealt with Cotton States for "comparable employment" for its employees. (Doc. 32 at 23-25.)  None of these instances indicate evidence of fraudulent intent at the May 2005 meeting, let alone substantial evidence of such.  The parties disagree regarding the nature and existence of the severance pay promise made at the May 2005 meeting, but the defendant's current assertion that the document distributed was never intended to be a legal and binding contract does not prove fraud in the promise.  Plaintiffs' new allegation regarding Farm Bureau's purported failure to obtain "comparable employment" for its employees is merely another assertion the defendant did not keep another, alternative promise; it does not support a conclusion of deceit with regard to severance pay.  Because Plaintiffs have failed to produce substantial evidence of Farm Bureau's fraudulent intent when the promise to pay severance was allegedly made, summary judgment must be granted to the defendant on this claim.[2]

---

[2]In their response memorandum, Plaintiffs attempt to state new fraud claims: (1) that Farm Bureau is liable for fraudulent suppression in failing to disclose that the employee handout was intended to be "informational," and (2) that Farm Bureau

VI.    Conclusion.

For the reasons stated above, Plaintiffs' motion for partial summary judgment will be denied in all respects.  Defendant's motion for summary judgment will be granted as to Plaintiffs' breach of contract claims for unpaid overtime and sick leave and Plaintiffs' claims of fraud; however, Defendant's motion will be denied with regard to Plaintiffs' breach of contract claim for severance pay.  A separate order will be entered.

Done this 11th day of August 2008.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671

_____

misrepresented a present fact at the May 2005 meeting when Pollard presented the employee handout as an agreement without intending it to be a contract.  (Doc. 32 at 25-28.)  These are new assertions that were not raised in Plaintiffs' Amended Complaint. A plaintiff cannot add a new legal claim in response to summary judgment.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004); *see also Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006). Moreover, even if these new fraud claims were properly before the Court, Plaintiffs have failed to adduce sufficient supporting evidence to survive summary judgment.